erty paid in for stock. The Commissioner stipulates that the value of the property was at least $205,400, which in our opinion entirely disposes of the matter.

The Commissioner relies upon the well-known doctrine that directors or promotors may not make a concealed profit in their dealings with the transfer of property to a corporation. It would, perhaps, be sufficient to dispose of this contention by saying that there is no evidence before the Board that there was any concealed profit, but, on the contrary, all of the stock was issued to the purchasers of the property at the foreclosure sale, presumably in proportion to their contributions of cash required for that purpose. Apparently, the Commissioner places some significance upon the words " bona fide " as contained in section 326 (a) (2). It seems to be his position that, under that section, before property can be paid in in good faith, there must have been strict compliance with all equitable rules involving the making of concealed profits, or, indeed, profits at all, by promoters, directors or prospective stockholders in connection with the transfer of property under the conditions existing in this and similar cases.

It seems to us more reasonable to interpret this section of the statute with reference to the effect, in terms of taxation, of the language used. We believe that what Congress was contemplating was the more or less notorious practice of issuing " watered " stock by corporations, the effect of which on invested capital would be, if actual values were not used, to allow a much greater exemption from excess-profits and war-profits taxes than the actual investment of the stockholders of the corporation warranted. This point has been fully discussed in the *Appeal of Central Consumers Wine & Liquor Co.*, 1 B. T. A. 1190, and requires no further explanation here.

---

Appeal of **ANDERSON MANUFAC-TURING CO.**                    **Docket No. 630.**

Submitted April 11, 1925; decided May 26, 1925.

*C. R. McAtee, Esq.*, for the taxpayer.

*A. J. Seaton, Esq.*, for the Commissioner.

Before JAMES, STERNHAGEN, TRAMMELL, and TRUSSELL.

This is an appeal from a deficiency in income and profits tax for fiscal years ended May 31, 1918, May 31, 1920, and May 31, 1921, amounting for 1918 to $1,618.37; for 1920 to $3,914.82; and for 1921 to $7.42; a total of $5,540.61. The parties have agreed upon the disposition of the appeal, and from the stipulations filed setting forth the issues and the agreement thereon, the Board makes the following

### FINDINGS OF FACT.

The annual depreciation upon miscellaneous assets costing $383.63, found to be a capital asset and not an expense, and upon furniture and fixtures costing $479.01, shall be at the rate of 10 per cent for the taxable period ended May 31, 1921.

For the taxable year ended May 31, 1921, taxes chargeable to surplus are $24.22 instead of $53.22, as shown on the original and amended returns.

*Moving expenses $2,023.54.*—The taxpayer claimed this item as a deduction under Schedule A, Item 12, of the original and amended returns for the fiscal year ended May 31, 1920. The Bureau disallowed the deduction for the reason that an analysis of surplus showed that it had already been deducted for the year ended May 31, 1919. The return for the year 1919 disclosed a loss for that year of $3,490.10. This loss completely reconciled with the balance sheets as of May 31, 1918, and May 31, 1919. The balance sheet as of May 31, 1919, filed with the *1919* return did *not* show any deferred asset under caption of " Moving Expense." It did, however, show a deficit of $5,019.35. The balance sheet as of May 31, 1919, filed with the original *1920* return, showed a deferred asset captioned " Moving Expense " in the amount of $3,117.71. The deficit account on this balance sheet was $1,901.64, or $3,117.71 less than the deficit shown on the balance sheet as of May 31, 1919, filed with the *1919* return. The balance sheet as of May 31, 1919, filed with the amended 1920 return also showed a deferred asset captioned " Moving Expense " in the amount of $3,117.71. No such deferred asset appeared on the balance sheet as of May 31, 1920, filed with either the original or amended 1920 returns. The taxpayer deducted $14,010.74 as ordinary and necessary expense under Schedule A, Item 12, of the 1919 return. In an itemized statement of this amount attached to the 1919 return appears " General Expenses $5,260.19." The taxpayer testified that the amount was set up on the books as " General Expense." The taxpayer's position before the Board is that the amount of $2,023.54 should be allowed as a deduction for the fiscal year ended May 31, 1920, and, if not, then it should be allowed as a deduction for the fiscal year ended May 31, 1919, and applied against 1918 income in accordance with section 204 of the Revenue Act of 1918. The Bureau's position is that the amount in question has already been allowed as a deduction from gross income in 1919 and that, if any adjustment is to be made with respect to this item other than that shown in the deficiency letter, the Board should further increase income for the fiscal year 1920 by $1,094.17, the difference between $3,117.71 and $2,023.54, since no deferred asset appeared on the closing balance sheet for the fiscal year 1920. The taxpayer abandons this allegation of error.

*Proration of 1919 net loss.*—The taxpayer sustained a net loss for the fiscal year ended May 31, 1919, of $3,490.10. It contends that since seven months of the fiscal year ended May 31, 1919, fell within the period October 31, 1918, to January 1, 1920, mentioned in section 204 of the Revenue Act of 1918, it should be entitled to apply seven-twelfths of its net loss for the fiscal year ended May 31, 1919, against income for the fiscal year ended May 31, 1918, and the balance, if any, against net income for the fiscal year ended May 31, 1920. The taxpayer abandons this allegation of error.

*Increase in invested capital of $16,674.00.*—This amount represents depreciation and obsolescence disallowed as a deduction for the fiscal year ended May 31, 1918, which consisted of the remaining undepreciated balance of a contended March 1, 1913, value of patents and

patterns in the amount of $33,236.92. The taxpayer contends that if $16,674.00 is disallowed in 1918, it should be included in invested capital for 1920. The Bureau's position is that the greater part of $16,674.00 is made up of unrealized appreciation and therefore can not be included in invested capital. The taxpayer abandons this allegation of error.

*March 1, 1913, value of patents and patterns.*—During 1910, 1911, and 1912 the taxpayer acquired patents and patterns at a cost of $8,236.92, as follows:

| | |
|---|---:|
| United States patents | $373.00 |
| Foreign patents | 1,403.00 |
| Patterns | 6,460.00 |
| | 8,236.92 |

On May 31, 1912, the patents were carried on the books at a value in excess of $100,000. At this time the taxpayer was contemplating merging with the Robinson Parker people. The latter thought the patents were carried at too high a figure, whereupon they were reduced to $26,776. The value at which patents and patterns were carried on the books on March 1, 1913, was as follows:

| | |
|---|---:|
| United States patents | $20,373.00 |
| Foreign patents | 6,403.00 |
| Patterns | 6,460.92 |
| | 33,236.92 |

The taxpayer's position before the Board is that the patents and patterns had a March 1, 1913, value equal to $33,236.92, which position is denied by the Bureau. The taxpayer's president testified that the corporation had an offer of $60,000 for the Mexican patent and had the deal partly closed when the revolution in Mexico caused the deal to be abandoned; that it had an offer for the Canadian patent of $50,000, but that the deal was not consummated. The Commissioner concedes that the patents and patterns of the taxpayer had a value on March 1, 1913, of $33,236.92.

*Obsolescence loss in 1918.*—The patents and patterns were carried on the books at $33,236.92 until 1918, when $18,000 was charged off and deducted in the original return for the fiscal year ended May 31, 1918. The balance, or $15,236.92, was charged off in 1920 and deducted on the original return for the fiscal year ended May 31, 1920. On September 6, 1921, amended returns were filed for the fiscal years ended May 31, 1918, 1920, and 1921, in which $17,295.34 was claimed as a deduction for depreciation and obsolescence on patents and patterns for the fiscal year ended May 31, 1918. This amount represented the aggregate of the residual book value of said assets after deducting the accumulated depreciation up to the fiscal year 1918. The Bureau disallowed $16,674.00 of the amount claimed for the reason that the March 1, 1913, value had not been established and that the taxpayer had not proven that the patents and patterns became obsolete and worthless during the fiscal year 1918. The business of the taxpayer up to 1918 was that of manufacturing oxygen and acetylene plants. The taxpayer's president testified that it was compelled to abandon the business of manufacturing oxygen and acetylene plants in the early part of 1918, due to the advanced price in potash and the fact that other manufacturers used oxygen from

air and water. The Commissioner concedes that the unexhausted portion of the patents and pattern value as of June 1, 1917, should be allowed as a loss for the fiscal year ended May 31, 1918.

*Depreciation on machinery and tools.*—The taxpayer claimed $3,211.51 for depreciation on machinery and tools in both the original and amended returns for the fiscal year ended May 31, 1921. This amount has been allowed by the Bureau. In this appeal the taxpayer has set up a depreciation schedule claiming $4,470.21 as depreciation on machinery and tools for the fiscal year ended May 31, 1921. This amount is arrived at by depreciating the original cost at 10 per cent. Twenty-three thousand nine hundred and seventy dollars and ninety-four cents of the total cost of $45,951.93 was acquired during January and February, 1921. In the taxpayer's schedule depreciation has been claimed on the $23,970.94 for a full year. The taxpayer abandons this allegation of error.

*Depreciation on Ford truck.*—The taxpayer purchased a new Ford truck in 1919 at a cost of $900. It also acquired two second-hand cars that were already two years old when acquired. The taxpayer claimed a rate of depreciation of 33⅓ per cent on all three cars. The Bureau has allowed a rate of 33⅓ per cent on the two second-hand cars but has depreciated the new car at a rate of 20 per cent. The taxpayer abandons this allegation of error.

### DECISION.

The deficiency should be recomputed in accordance with the foregoing stipulation. Final determination will be settled on consent or on ten days' notice, in accordance with Rule 50.

---

Appeal of **HOLT-GRANITE MILLS CO.**          Docket No. 1784.

Submitted April 14, 1925; decided May 26, 1925.

*E. S. Parker, Jr., Esq.,* and *J. L. Elliott, C. P. A.,* for the taxpayer.

*W. Frank Gibbs, Esq.,* for the Commissioner.

Before STERNHAGEN, TRAMMELL, PHILLIPS, and LOVE.

This appeal is from a determination of a deficiency in income and profits taxes for the years 1917, 1918, and 1919, in the aggregate sum of $24,263.31.

At the hearing of the appeal before the Board, the correctness of the Commissioner's determination was conceded by the taxpayer, save in respect to two items, to wit: An item of $10,000 contributed to the Aycock Graded School and an item of $8,714.73 expended by the taxpayer on its sewer system to conform to regulations prescribed by an act of the legislature of North Carolina.

The contention of the taxpayer is that the contribution to said school was a business expense; and that the item of $8,714.73 was